# OWNBEY *v.* MORGAN ET AL., EXECUTORS OF MORGAN.

### ERROR TO THE SUPREME COURT OF THE STATE OF DELAWARE.

No. 99. Argued November 18, 1920.—Decided April 11, 1921.

1. The Delaware rule in foreign attachment cases which conditioned the defendant's right to appear and contest the merits of the plaintiff's demand upon his first giving special bail or (as the rule was amended) a surety's undertaking, and which was in force since colonial days, finding its origin in the Custom of London and its counterparts or analogues in procedure adopted by other colonies and States and familiar in the common law and admiralty, cannot be regarded as an arbitrary and unreasonable rule, violative of the due process clause of the Fourteenth Amendment (Del. Rev. Code, 1915, 4123, § 6). Pp. 102, 108.

2. Nor may the rule be adjudged obnoxious to due process in a particular case where, through exceptional misfortune, a defendant was unable to furnish the necessary security. P. 110.

3. One who acquires property in a State and departs must be presumed to have known and consented to such a rule of foreign attachment, already in force. P. 111.

4. A distinction made in foreign attachment cases between non-resident individuals and foreign corporations, requiring the individual to furnish special security before appearing and making defense but allowing the corporation to defend on the security of the attachment lien, *held* not a denial to individuals of equal protection of the law. P. 112.

5. The privileges and immunities referred to in the Fourteenth Amendment are such as owe their existence to the Federal Government, its national character, its Constitution, or its laws. P. 113.

30 Delaware, 297, affirmed.

THE case is stated in the opinion, *post*, 98.

*Mr. Louis Marshall* for plaintiff in error:

The statutes of Delaware and the proceedings taken thereunder in this case are unconstitutional and void, in

that plaintiff in error was thereby deprived of his property without due process of law. The essential elements of due process, namely, the right to appear and to be heard in defense of the action in which plaintiff in error's property was attached, are lacking here. *Eckerson* v. *Board of Trustees of Haverstraw*, 151 N. Y. 75; *City of Rochester* v. *Holden*, 224 N. Y. 386, 396; *Hovey* v. *Elliott*, 167 U. S. 409; *McVeigh* v. *United States*, 11 Wall. 259; *Windsor* v. *McVeigh*, 93 U. S. 274; *Scott* v. *McNeal*, 154 U. S. 34; *Roller* v. *Holly*, 176 U. S. 398, 408, 409; *Central of Georgia Ry. Co.* v. *Wright*, 207 U. S. 127; *Londoner* v. *Denver*, 210 U. S. 373, 385; *Denver* v. *State Investment Co.*, 49 Colorado, 244; *Wetmore* v. *Karrick*, 205 U. S. 141; *Ochoa* v. *Hernandez*, 230 U. S. 139, 161; *Riverside Mills* v. *Menefee*, 237 U. S. 189; *Pennington* v. *Fourth National Bank*, 243 U. S. 269, 270, 273; *Saunders* v. *Shaw*, 244 U. S. 317; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413.

The contention that the foreign attachment laws of Delaware derive their existence from the Custom of London and date from the colonial period, even if sound, cannot avail against the prohibition of the Fourteenth Amendment. The Delaware statute as interpreted does not provide the safeguards that constituted the essential features of the Custom of London. [Quoting Drake on Attachment, Sergeant on Foreign Attachments, Locke on Foreign Attachment, and pointing out variances between the Delaware statute and the Custom of London.] But even if, at the time of its enactment, the statute were to be regarded as a statutory adoption of the local law of London, it ceased to be valid when the Fourteenth Amendment went into effect, especially in view of the departure in the other States of the Union from the practice of permitting property to be seized in foreign attachment without affording the defendant an opportunity to appear and litigate the plaintiff's claim even though no security for the payment of any judgment that might be

recovered was given. [Attachment laws of Pennsylvania, New York, Illinois, and New Jersey.] The legislation of these States is typical of that elsewhere. It accomplishes the primary purpose of attachment laws, that of securing the appearance of a defendant, and at the same time effectuates the secondary object of securing for the plaintiff a lien on the property of the defendant which continues until it is dissolved either because the statutory prerequisites to a valid attachment have not been complied with or in consequence of the giving of a bond by the defendant for the purpose of procuring a dissolution of the attachment. This procedure conforms with due process of law. It affords a defendant the right to a hearing before his property is condemned. It enables him to respond to the citation that summons him into court without the imposition of an onerous or impossible condition. See 1 Shinn on Attachment and Garnishment, §§ 95, 191, 221, 442, 449.

Even if it were assumed that the Delaware statute was in exact conformity with the Custom of London, there has been such a departure from it in the general legislation of the several States that it must be regarded as opposed to the genius of our institutions. In any event, there is such a repugnancy between the Delaware statute, as interpreted, and the Fourteenth Amendment, that the latter must be regarded as having modified the statute so as to eliminate the unconstitutional features of the law. *Neal* v. *Delaware*, 103 U. S. 370; *Ex parte Yarbrough*, 110 U. S. 651, 665; *Guinn* v. *United States*, 238 U. S. 347, 363; *Kentucky Railroad Tax Cases*, 115 U. S. 321–334; *East St. Louis* v. *Amy*, 120 U. S. 600; *Kaukauna Co.* v. *Green Bay Canal Co.*, 142 U. S. 254; *Wilkins* v. *Jewett*, 139 Massachusetts, 29; *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146, 162.

The cases of *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272–280; *McMillen* v. *Anderson*,

95 U. S. 37; *Central Loan & Trust Co.* v. *Campbell Co.,* 173 U. S. 84; *Capital Traction Co.* v. *Hof,* 174 U. S. 1; and *Anderson* v. *Henry,* 45 W. Va. 319, relied upon by defendants in error, do not sustain their position.

The Delaware statute deprived plaintiff in error of the equal protection of the laws, since, under the interpretation given to it, he was debarred from appearing and defending without first giving special bail, whilst under the express terms of the statute a foreign corporation may appear and answer without the necessity of giving bail. *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 560; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150; *Farrington* v. *Mensching,* 187 N. Y. 8. See also *Fort Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Bogni* v. *Perotti,* 224 Massachusetts, 152; *Phipps* v. *Wisconsin Central Ry. Co.,* 133 Wisconsin, 153.

*Mr. Willard Saulsbury* and *Mr. Harlan F. Stone* for defendants in error:

If the bail demanded by the plaintiff in the attachment below had been excessive, it would have been reduced and fixed at the proper amount by the court to its satisfaction on the application of the defendant.

The real purpose of the effort of the defendant below to enter a general appearance was to transform the action from a proceeding *in rem* to an action *in personam* and thus free the attached property from the attachment.

By settled procedure of the common law a defendant cannot plead in bailable actions until he has appeared by giving bail.

Appearance can be effected at common law both in actions of debt and in proceedings begun by foreign attachment only by putting in special bail.

A state statute requiring appearance to be made by putting in special bail does not violate the due process clause of the Fourteenth Amendment. The process of law known as foreign attachment is not prohibited by the due process clause. A process of law is due process within the meaning of constitutional limitations if it can show the sanction of settled usage both in this country and in England.

A process of law which conforms to the statutes and decisions of a State and under which the defendant is given opportunity for defense in accordance with settled procedure of the State, will not be held unconstitutional merely because the defense might be made easier or more convenient for the defendant by a different procedure.

That part of the procedure of the defendants in error in the Delaware courts, attacked by the plaintiff in error, is not the procedure on foreign attachment peculiar to the Custom of London, but is the practice adopted both under the Custom of London and by the common law and by modern statutes requiring appearance by special bail in actions of debt to recover more than $50.

The plaintiff in error is not within the jurisdiction of Delaware within the meaning of the term "jurisdiction" as used in the guaranty of equal protection given by the Fourteenth Amendment; nor is he deprived of the equal protection of the laws.

MR. JUSTICE PITNEY delivered the opinion of the court.

This writ of error brings under review a judgment of the Supreme Court of the State of Delaware affirming a judgment of the Superior Court in a proceeding brought by defendants in error by foreign attachment against the property of plaintiff in error pursuant to the statutes of that State.

Proceedings were commenced in the Superior Court

December 23, 1915, by the filing of an affidavit entitled in the cause, made by one Joyce, a credible person, and setting forth that defendant Ownbey resided out of the State and was justly indebted to plaintiffs in a sum exceeding fifty dollars. Thereupon a writ of foreign attachment was issued to the sheriff of New Castle County, which plaintiffs caused to be indorsed with a memorandum to the effect that special bail was required in the sum of $200,000, and under which the sheriff attached $33,324\frac{1}{3}$ shares of stock (par value $5 each) held and owned by defendant in the Wootten Land & Fuel Company, a Delaware corporation, and made a proper return. Plaintiffs filed a declaration demanding recovery of $200,000, counting upon a combination of the common money counts in assumpsit. Whether such pleading was required or even permitted by the statutes is questionable; but this is not material for present purposes. Not long afterwards defendant, by attorneys, without giving security, went through the form of entering a general appearance, and filed pleas of *non assumpsit*, the statute of limitations, and payment. Plaintiffs' attorneys moved to strike out the appearance and pleas on the ground that special bail or security as required by the statute in suits instituted by attachment had not been given. To this motion defendant filed a written response setting up that the Wootten Land & Fuel Company, although a Delaware corporation, was engaged in coal mining and all its other activities and business in the States of Colorado and New Mexico, where it had large and valuable property; that defendant was a resident of Colorado, and the stock in said company attached in this case constituted substantially all his property; that the company was in the hands of a receiver, and because of this the market value of the shares attached was temporarily destroyed, so that they were unavailable for use in obtaining the required bail or security to procure the discharge of the

shares from attachment, and that it was impossible for
defendant to secure bail or security in the sum of $200,000,
or any adequate sum, for the release of the shares so
attached; that defendant had a good defense, in that there
was no indebtedness upon any account or in any sum due
from him to plaintiffs; that by the true construction of
the Delaware statutes the entry of bail or security for
the discharge of the property attached was not a necessary
prerequisite to the entry of defendant's appearance, and
such appearance might be made without disturbing the
seizure of property under the writ or its security for any
judgment finally entered; and that if the statutes could
not be so construed as to permit appearance and defense
in a case begun by foreign attachment without the entry
of bail or security for the discharge of the property seized,
they were unconstitutional under the first section of the
Fourteenth Amendment, in that (a) they abridged the
privileges and immunities of citizens of the United States;
(b) deprived defendants in cases brought under them of
property without due process of law; and (c) denied to
such defendants the equal protection of the laws.

Upon motion of plaintiffs this response and the at-
tempted appearance and pleas of defendant were struck
out upon the ground that special bail or security as re-
quired by the statute had not been given by defendant
or any person for him; the Court in Banc holding that in
a foreign attachment suit against an individual there
could be no appearance without entering "special bail,"
that the requirement to that effect was not arbitrary or
unreasonable, and the statute was not unconstitutional.
29 Delaware (6 Boyce), 379, 398–406.

Thereupon judgment in favor of plaintiffs and against
defendant for want of appearance was ordered, collectible
only from the property attached, the amount to be as-
certained by inquisition at bar. The inquisition after-
wards proceeded, and resulted in the finding of damages

to the amount of $200,168.57, for which final judgment was entered.

Defendant repeatedly asked that the proceedings be opened and he permitted to appear and disprove or avoid plaintiffs' debt or claim, saying that shortly after the issuance of the writ of attachment, and as soon as advised thereof, he had proceeded to Delaware, retained counsel, and used every possible effort to secure bail in the sum of $200,000, offering the attached stock as collateral security to indemnify a surety, but because the property of the Wootten Company was in the hands of a receiver he had found it impossible to obtain any surety; and that he was not at present nor was he at the time of the issuance of the writ of foreign attachment indebted to plaintiffs in any sum whatever, but had a just and legal defense to the whole of the alleged cause of action. These applications were denied, upon opinions of the Court in Banc (29 Delaware [6 Boyce], 417, 434–436), and the Superior Court ordered the shares of stock in question sold in order to satisfy the debt, interest, and costs.

The Supreme Court affirmed the judgment (30 Delaware ('7 Boyce), 297, 323, and the case comes here upon the contention that the statutes of Delaware, as thus construed and applied, are repugnant to the first section of the Fourteenth Amendment.

The statutes are found in Delaware Rev. Code, 1915, and the provisions bearing upon the controversy are set forth in the margin.[1]

---

[1] 4142. Sec. 25. A writ of foreign attachment may be issued against any person not an inhabitant of this State, . . . upon affidavit made by the plaintiff, or some other credible person, and filed with the Prothonotary, that the defendant resides out of the State, and is justly indebted to the said plaintiff in a sum exceeding fifty dollars. . . .

4145. Sec. 28. The said writ shall be framed, directed, executed and returned, and like proceedings had, as in the case of a domestic attachment, except as to the appointment of auditors and distribution among creditors; for every plaintiff in a foreign attachment shall have

The principal contention is based upon the "due process of law " clause of the Fourteenth Amendment. It is said the essential element of due process—the right to appear and be heard in defense of the action—is lacking. But the statute in plain terms gives to defendant the

---

the benefit of his own discovery, and, after judgment, may proceed, by order of sale, *fieri facias, capias ad satisfaciendum* or otherwise, as on other judgments.

Provided, that before receiving any sum under such judgment, the plaintiff shall enter into recognizance as required by section 18 preceding.

4135. Sec. 18. Provided, that before any creditor shall receive any dividend, or share, so distributed, he shall, with sufficient surety, enter into recognizance to the debtor, before the Prothonotary, in a sufficient sum, to secure the repayment of the same or any part thereof, if the said debtor shall, within one year thereafter, appear in the said Court and disprove or avoid such debt, or such part thereof.

The proceeding for this purpose may be by motion to the Court, and an issue framed and tried before the same.

4123. Sec. 6. If the defendant in the attachment, or any sufficient person for him, will, at any time before judgment, appear and give security to the satisfaction of the plaintiff in such cause, or to the satisfaction of the court and to all actions brought against such defendant, to the value of the property, rights, credits and monies attached, and the costs, then the garnishees and all property attached shall be discharged. The security may be taken thus: "On the......day of ........19.., A. B. becomes security in the sum of.........that C. D. shall answer the demand of E. F. in this suit, and shall satisfy any judgment to the extent of the value of the property attached, that may be recovered against him therein"; which entry, on the appearance docket, shall be signed by the security, and shall be an obligation of record of the same force and effect, and subject to the same remedy by an action of debt, as any other obligation for the payment of money may be.

4137. Sec. 20. Judgment shall be given for the plaintiff in the attachment the second term after issuing the writ, unless the defendant shall enter special bail as aforesaid; whereupon, the court shall make an order that the sheriff shall sell the property attached, on due notice, and pay the proceeds (deducting legal costs and charges) to the auditors for distribution.

4143. Sec. 26. A writ of foreign attachment may be issued out of

opportunity to appear and make his defense, conditioned only upon his giving security to the value of the property attached. Hence the question reduces itself to whether this condition is an arbitrary and unreasonable requirement, so inconsistent with established modes of administering justice that it amounts to a denial of due process. And this must be determined not alone with reference

the Superior Court of this State against any corporation, aggregate or sole, not created by or existing under the laws of this State, upon affidavit made by the plaintiff or any other credible person, and filed with the Prothonotary of said Court, that the defendant is a corporation not created by, or existing under the laws of this State, and is justly indebted to the said plaintiff in a sum of money, to be specified in said affidavit, and which shall exceed fifty dollars.

The said writ shall be framed, directed, executed and returned, and like proceedings had as in the case of a foreign attachment issued under the next foregoing section, except that attachments to be issued under this section shall be dissolved only in the manner hereinafter provided.

In any attachments to be issued under this section, judgment shall be given for the plaintiff at the second term after the issuing of the writ, unless the defendant shall have caused an appearance by attorney to be entered, in which case the like proceedings shall be had, as in suits commenced against a corporation by summons; Provided, however, if the defendant in the attachment or any sufficient person for him, shall, at any time before judgment, give security for the payment of any judgment that may be recovered in said proceedings with costs, then the garnishees and all the property attached, shall be discharged, and the attachment dissolved, and like proceedings be had as in other cases of foreign attachment, in which the attachment has been dissolved by special bail. . . .

4150. Sec. 33. The shares of any person in an incorporated company, with all the rights thereto belonging, shall be subject to attachment as provided by Sections 95 to 99, inclusive, of Chapter Sixty-five. [The reference is to Rev. Code, §§ 2009–2013, which prescribe the method of attaching stock, selling it under such attachment, and passing title thereto].

1986. Sec. 72. For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this Chapter or otherwise, shall be regarded as in this State.

to a case of peculiar hardship arising out of exceptional circumstances, but with respect to the general effect and operation of the system of procedure established by the statutes.

The act concerning foreign attachments has been upon the statute books of Delaware since early colonial days. Like the attachment acts of other States, it traces its origin to the Custom of London, under which a creditor might attach money or goods of the defendant either in plaintiff's own hands or in the custody of a third person, by proceedings in the mayor's court or in the sheriff's court. The subject is treated at large in Bohun's *Privilegia Londini* (3d ed., 1723), pp. 253, *et seq.* See also Bac Abr. (Bouv. ed.), *tit.* Customs of London (H); Com. Dig. (4th ed.) *tit.* Attachment, Foreign, (A); Pulling, Laws & Customs of London (2d ed.) 187 *et seq.;* Serg. Attach., Appendix, pp. 205, *et seq.* As is said in Drake on Attachment, § 3: "This custom, notwithstanding its local and limited character, was doubtless known to our ancestors, when they sought a new home on the Western continent, and its essential principle, brought hither by them, has, in varied forms, become incorporated into the legal systems of all our States; . . . Our circumstances as a nation have tended peculiarly to give importance to a remedy of this character. The division of our extended domain into many different States, each limitedly sovereign within its territory, inhabited by a people enjoying unrestrained privilege of transit from place to place in each State, and from State to State; taken in connection with the universal and unexampled expansion of credit, and the prevalent abolishment of imprisonment for debt; would naturally, and of necessity, lead to the establishment, and, as experience has demonstrated, the enlargement and extension, of remedies acting upon the property of debtors."

By the Custom a defendant could not appear or raise

an issue about the debt claimed without entering special bail, or else surrendering his body. *Andrews* v. *Clerke,* Carth. 25, 26. Hence it naturally came about that the American colonies and States, in adopting foreign attachment as a remedy for collecting debts due from non-resident or absconding debtors, in many instances made it a part of the procedure that if defendant desired to enter an appearance and contest plaintiff's demand he must first give substantial security, usually in the form of special bail. Besides Delaware, this was true of New Jersey (Pat. L., p. 296, § 7; p. 298, § 16; *Watson* v. *Noblett,* 65 N.. J. L. 506, 508); Pennsylvania (*McClenachan* v. *McCarty,* 1 Dall. 375, 378); Maryland (*Campbell* v. *Morris,* 3 Harr. & McH. 535, 552–553); Virginia (*Tiernans* v. *Schley,* 2 Leigh, 25, 29); North Carolina (*Britt* v. *Patterson,* 9 Ired. 197, 200; *Alexander* v. *Taylor,* 62 N. Car. 36, 38); South Carolina (*Acock* v. *Linn,* 1 Harp. 368, 369–370; *Fife & Co.* v. *Clarke,* 3 McCord, 347, 352; *Callender & Co.* v. *Duncan,* 2 Bailey, 454); Tennessee (*Boyd* v. *Buckingham & Co.,* 10 Humph. 434, 437); and Ohio (1 Chase's Stat. 462, § 15, cited by counsel in *Voorhees* v. *Bank of United States,* 10 Pet. 449, 453).

As to the legislation in Delaware, where the system is authoritatively deduced from the Custom of London (*Reybold* v. *Parker,* 6 Houst. 544, 555; *Reynolds* v. *Howell,* 1 Marvel, 52, 59; *Fowler* v. *Dickson,* 24 Del. [1 Boyce] 113, 119), not stopping to trace early colonial laws mentioned in *Reybold* v. *Parker, supra* (p. 553), we find that an act providing for proceedings by attachment against non-resident as well as against absconding debtors was passed by the Assembly of the Delaware Counties and the Province of Pennsylvania March 24, 1770 (Del. Laws 1753–1777, pp. 165, 174); was supplemented by Acts of the Legislature of the State of Delaware, January 31, 1817 (Del. Laws 1817, p. 232, c. 133), and January 27, 1823 (Del. Laws 1822–1824, p. 261, c. 162); and found

its way, without change material to the present purpose, into Delaware Rev. Code, 1852, as c. 104. By § 3 (Code, § 2266) a defendant desiring to enter appearance was required to put in special bail to the value of the property attached.

In 1856 it was held by the Superior Court that the act did not extend to foreign corporations; and this because a corporation could not put in special bail or be surrendered to bail when it appeared, and, in the absence of provision for the security to be given, it must be held that the statute did not contemplate or include the case of such a corporation. *Vogle* v. *New Granada Canal Co.*, 1 Houst. 294, 299. To remedy this, a supplement was enacted March 2, 1857 (11 Del. Laws, 482, c. 426), providing that the writ might be issued against a foreign corporation and like proceedings be had thereon as in other cases, except that the attachment should be dissolved only by defendant bringing into court the sum of money specified as the plaintiff's demand in the affidavit on which the writ was issued, or giving security for the payment of any judgment recovered; but that an appearance might be entered for defendant without bringing in the money or giving the security mentioned, in which case the writ should continue to bind the property attached. An amendment passed March 17, 1875 (15 Del. Laws, 305, 306, cc. 181, 182), eliminated the express provision for appearance without dissolving the attachment, and amended the provision as to the form of security to be given, leaving the section to stand as it appears in Del. Rev. Code 1915, 4143, § 26, quoted in the margin, *supra*. Notwithstanding this amendment, it seems to be thought that in attachment against a foreign corporation the entry of security is still not a prerequisite to appearance, and necessary only if it be desired to discharge the garnishees and the property attached (2 Woolley Del. Prac., § 1293); and in favor of plaintiff in error we shall so assume.

Meantime, the provision requiring a non-resident individual to enter special bail as a condition of making appearance remained as before until March 6, 1877, when the legislature substituted a provision requiring security to be given to the satisfaction of the plaintiff or of the court to the value of the property attached and costs, conditioned that defendant answer the plaintiff's demand and satisfy any judgment recovered, to the extent of the value of the property attached (15 Del. Laws, 612, c. 473).  In this form it is found in Del. Rev. Code 1915, 4123, § 6, quoted in the margin, *supra.*

It will be seen that from the beginning the giving of security, either in the form of special bail or a substituted undertaking for the payment of the judgment, has been made a condition precedent to the entering of appearance and making defense upon the merits by a non-resident individual defendant whose property was taken under foreign attachment.  In the present case the Court in Banc called attention to the hardship occasionally arising from this, and suggested that the legislature provide a remedy (29 Del. [6 Boyce] 435).  There followed an amendatory act of March 23, 1917 (29 Del. Laws, 844, c. 258), permitting an appearance and defense without the giving of special security, but leaving the lien upon the property attached to remain as security *pro tanto;* which was made to apply, subject to conditions, to all suits instituted (as this one was) after January 1, 1915.  Whether plaintiff in error was at liberty to avail himself of this statute we are not advised; and for present purposes it will be disregarded. ·

The courts of Delaware at all times have laid emphasis upon the difference between the original character of a suit by foreign attachment, treating it as an *ex parte* proceeding *quasi in rem,* looking to a judgment of condemnation against the property attached and having the incidental object of compelling defendant's appearance—

on the one hand—and the action *in personam*, with its appropriate incidents, that resulted from an appearance by defendant accompanied by the giving of security— on the other. *Wells* v. *Shreve's Administrator* (1861), 2 Houst. 329, 369–370; *Frankel* v. *Satterfield* (1890), 9 Houst. 201, 209; *National Bank of Wilmington & Brandywine* v. *Furtick* (1895), 2 Marvel, 35, 51. Recognizing the fundamental character of this distinction, and regarding the foreign attachment in Delaware as wholly statutory, the courts have not felt at liberty, in the absence of legislation, to give to the proceeding a hybrid character by permitting an appearance without security other than the property attached, leaving this to answer *pro tanto* the plaintiff's demand.

The requirement of special bail as a condition of appearance was long familiar in bailable actions at common law and in admiralty proceedings. In requiring such bail from a non-resident defendant whose goods had been seized and who desired to be heard to contest the plaintiff's demand, Delaware did but follow familiar precedents and analogies, besides conforming to the Custom. It is not contended that the substitution, by the 1877 amendment, of a bond conditioned for payment of the judgment to the extent of the value of the property attached, in lieu of the special bail formerly required on entering appearance, made a substantial difference rendering the new requirement any more obnoxious to the due process clause than the earlier. It is the imposing of any condition whatever upon the right to be heard that is complained of.

Hence the question is whether the State, in thus adopting a time-honored method of procedure and preserving as a part of it a time-honored requirement of security, and in adhering logically to the ancient distinction between a proceeding *quasi in rem* and an action *in personam*, to the extent of refraining, until the amendment of 1917, from enacting legislation recognizing the peculiar appeal

of a defendant who may have no resources or credit aside
from the property attached, must be regarded as having
deprived such a defendant of his property without due
process of law, in contravention of the Fourteenth Amend-
ment. In our opinion, the question must be answered
in the negative.

In *Murray's Lessee* v. *Hoboken Land & Improvement
Co.*, 18 How. 272, 276, 280, which arose under the due
process clause of the Fifth Amendment, the court, by
Mr. Justice Curtis, declared (pp. 276–277): "The Con-
stitution contains no description of those processes which
it was intended to allow or forbid. It does not even declare
what principles are to be applied to ascertain whether it
be due process. . . . To what principles, then, are we
to resort to ascertain whether this process, enacted by
Congress, is due process? To this the answer must be
twofold. We must examine the Constitution itself, to see
whether this process be in conflict with any of its pro-
visions. If not found to be so, we must look to those
settled usages and modes of proceeding existing in the
common and statute law of England, before the emigra-
tion of our ancestors, and which are shown not to have
been unsuited to their civil and political condition by
having been acted on by them after the settlement of this
country."

In *Pennoyer* v. *Neff*, 95 U. S. 714, 722–724, it was shown
that the process of foreign attachment has its fundamental
basis in the exclusive jurisdiction and sovereignty of
each State over persons and property within its borders;
and although emphasis was there laid upon the authority
and duty of a State to protect its own citizens in their
claims against non-resident owners of property situate
within the State, it is clear that, by virtue of the "privi-
leges and immunities" clause of § 2 of Art. IV of the
Constitution, each State is at liberty, if not under a duty,
to accord the same privilege of protection to creditors

who are citizens of other States that it accords to its own citizens. *Blake* v. *McClung*, 172 U. S. 239, 248, *et seq.*

The record before us shows no judgment entered against plaintiff in error *in personam*, but only one for carrying into effect a lien imposed upon his interest in property within the jurisdiction of the State for the purpose of satisfying a demand made against him as a non-resident debtor, and established to the satisfaction of the court. And an analysis of his contentions shows that the real complaint was and is, not that there was any departure, arbitrary or otherwise, from the due and orderly course of procedure provided by the statutes of Delaware long before the case arose; but rather that the courts of the State declined to recognize the peculiar hardship of his case as sufficient ground for relaxing in his behalf the established legal procedure. His appeal in effect was to the summary and equitable jurisdiction of a court of law so to control its own process and proceedings as not to produce hardship. This is a recognized extraordinary jurisdiction of common-law courts, distinguishable from their ordinary or formal jurisdiction. It has been much developed since the separation of the American Colonies from England. But, where the proceedings have been regular, it is exercised as a matter of grace or discretion, not as of right, and is characterized by the imposition of terms on the party to whom concession is made. Smith's Action at Law, 4th ed. (1851), pp. 22–27; Stewart's Blackstone (1854), vol. 3, pp. 334–338. A liberal exercise of this summary and equitable jurisdiction, in the interest of substantial justice and in relaxation of the rigors of strict legal practice, is to be commended; but it cannot be said to be essential to due process of law, in the constitutional sense.

The due process clause does not impose upon the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with

provision against every possible hardship that may befall. It restrains state action, whether legislative, executive, or judicial, within bounds that are consistent with the fundamentals of individual liberty and private property, including the right to be heard where liberty or property is at stake in judicial proceedings. But a property owner who absents himself from the territorial jurisdiction of a State, leaving his property within it, must be deemed *ex necessitate* to consent that the State may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted. A procedure customarily employed, long before the Revolution, in the commercial metropolis of England, and generally adopted by the States as suited to their circumstances and needs, cannot be deemed inconsistent with due process of law, even if it be taken with its ancient incident of requiring security from a defendant who after seizure of his property comes within the jurisdiction and seeks to interpose a defense. The condition imposed has a reasonable relation to the conversion of a proceeding *quasi in rem* into an action *in personam;* ordinarily it is not difficult to comply with—a man who has property usually has friends and credit—and hence in its normal operation it must be regarded as a permissible condition; and it cannot be deemed so arbitrary as to render the procedure inconsistent with due process of law when applied to a defendant who, through exceptional misfortune, is unable to furnish the necessary security; certainly not where such defendant—as is the case now presented, so far as the record shows—has acquired the property-right and absented himself from the State after the practice was established, and hence with notice that his property situate there would be subject to disposition under foreign attachment by the very method that afterwards was pursued, and that he would have no right to

enter appearance and make defense except upon giving security.

However desirable it is that the old forms of procedure be improved with the progress of time, it cannot rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy. Its function is negative, not affirmative, and it carries no mandate for particular measures of reform. For instance, it does not constrain the States to accept particular modern doctrines of equity, or adopt a combined system of law and equity procedure, or dispense with all necessity for form and method in pleading, or give untrammelled liberty to make amendments. Neither does it, as we think, require a State to relieve the hardship of an ancient and familiar method of procedure by dispensing with the exaction of special security from an appearing defendant in foreign attachment.

We conclude that the statutes under consideration were not in conflict with the due process provision of the Fourteenth Amendment.

Under the equal protection clause it is contended that there is unwarranted discrimination in debarring an individual from appearing and making defense without first giving special security, while a foreign corporation may appear and answer without giving any security, except for the lien of the process upon the property attached. But, as we have seen, the difference in treatment was resorted to because from their nature corporations could not put in special bail or be surrendered thereunder. This was a reasonable ground for separating defendants into two classes—individuals and corporations; and it was natural that in subsequent legislation the classes should be separately treated, as was done. There is here no denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment.

The objection that the acts abridge the privileges and

immunities of citizens of the United States, within the meaning of the same Amendment, is not pressed, and plainly is untenable. As has been pointed out repeatedly, the privileges and immunities referred to in the Amendment are only such as owe their existence to the Federal Government, its national character, its Constitution, or its laws. *Maxwell* v. *Bugbee,* 250 U. S. 525, 537–538, and cases cited. The privileges and immunities of plaintiff in error alleged to be abridged by the statutes in question have no such federal origin.

The judgment under review is

*Affirmed.*

MR. JUSTICE McREYNOLDS concurs in the result.

THE CHIEF JUSTICE and MR. JUSTICE CLARKE dissent.