**Arthur GORDON and Hazel E. Berger, Plaintiffs,**

**v.**

**William C. MICHEL et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Oct. 24, 1972.

William E. Taylor, Jr., Wilmington, and Bennett Frankel, New York City, for plaintiffs.

Stanley W. Balick, Wilmington, for defendants David Brown and Richard D. Zanuck.

Richard Allen Paul, Wilmington, for defendants David Merrick and Seymour Poe.

Richard F. Corroon and Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, for all other specially-appearing defendants.

S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Twentieth Century-Fox Film Corp.

DUFFY, Chancellor:

The issue for decision is a motion to quash and vacate a sequestration order which resulted in the seizure of certain property owned by the individual defendants.

A.

On June 4, 1971 plaintiffs commenced a stockholders' derivative suit against Twentieth Century-Fox Film Corporation, a Delaware corporation, its former and present directors, and David Merrick, alleging the breach of various fiduciary obligations by the individual defendants. Plaintiffs ask for an accounting and a declaration that certain of Twentieth Century's by-laws are invalid.

Upon compliance with the procedural requirements of 10 Del.C. § 366, the Court issued an order of sequestration authorizing the seizure of shares of stock and of contract rights belonging to the non-resident defendants. Certain of such defendants appeared and moved to quash the sequestration order, attacking on various grounds both the validity of the order and the constitutionality of the statute under which it was issued. Thereafter, plaintiffs voluntarily released all of the contract rights from sequestration. While defendants ask for a decision as to the seizure of those rights, I regard that issue as moot and the ruling here is limited to the stock still subject to the sequestration order. The sole issue remaining is whether 10 Del.C. § 366 is unconstitutional as it applies to that seizure.

B.

The sequestration procedure has been an established part of our law for many years.[1] In a series of decisions by the Delaware Supreme Court and by this Court, the perimeters of sequestration have been defined, its purpose has been established and its constitutionality has been approved. Indeed the rationale upon which sequestration rests was approved half a century ago by the United States Supreme Court in Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921) wherein the Delaware foreign attachment statute was found to be constitutional. And in recent years the sequestration procedure has been routinely invoked by litigants in a long series of cases centered chiefly around corporate litigation. In light of this history, the only argument this Court will consider relates to the effect of recent opinions by the United States Supreme Court on the sequestration statute. Briefly, defendants contend that the principles announced in Sniadach v. Family Finance

---

1. 10 Del.C. § 366 empowers the Court of Chancery to seize property (having a situs in this State) of a non-resident to compel his appearance in a pending action. An order to this effect is often issued *ex parte*, without prior notice to the non-resident or opportunity to be heard; notice of the sequestration is thereafter given by mail and publication. Defendant may then either appear to contest the Court's jurisdiction or enter a general appearance and defend on the merits. Upon making a general appearance, defendant is entitled to have his property released unless plaintiff satisfies the Court that because of other circumstances there is a reasonable possibility that such release may render it substantially less likely that he will obtain satisfaction for any judgment secured. If defendant fails to appear the property may be sold to satisfy any judgment entered. See Folk, The Delaware General Corporation Law, p. 569.

Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), require re-examination of our sequestration law and compel the conclusion that the statute is unconstitutional.

### C.

Both *Sniadach* and *Fuentes* involved statutory pre-judgment remedies for creditors. In *Sniadach,* the Supreme Court held unconstitutional a Wisconsin pre-judgment wage garnishment statute and, in *Fuentes,* the Court struck down Florida and Pennsylvania pre-judgment replevin statutes. In both of those cases the Court held that failure to provide the debtor with notice and an opportunity to be heard prior to attachment or seizure of his property by a creditor constituted a deprivation of procedural due process.

■ Any significant taking of property is within the purview of the Due Process Clause. Fuentes v. Shevin, supra. And as the Court said in that case, ". . . it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." Thus, ordinarily, one would expect, as defendants argue, that sequestration would necessitate prior notice and an opportunity to be heard.

The most complete statement of the due process requirement was formulated in another context by the Supreme Court in Boddie v. Connecticut, 401 U.S. 371, 91 S. Ct. 780, 28 L.Ed.2d 113 (1971), and cited with approval in *Fuentes.* In *Boddie,* the Court considered the "root requirement" of the Due Process Clause to be:

". . . that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."

I am convinced that the Delaware sequestration procedure reflects just such a "valid governmental interest" within the meaning of that language.

### D.

■ In Delaware sequestration is analogous to a foreign attachment at law, Sands v. Lefcourt Realty Corp., 35 Del.Ch. 340, 117 A.2d 365 (1955); Cantor v. Sachs, 18 Del.Ch. 359, 162 A. 73 (1932); and it was the intent of the General Assembly to provide in equity an equivalent procedure. Wightman v. San Francisco Bay Toll-Bridge Co., 16 Del.Ch. 200, 142 A. 783 (1928); Sands v. Lefcourt Realty Corp., supra. The purpose of the statute is to compel appearance by a non-resident defendant, Loft, Inc. v. Guth, 25 Del.Ch. 363, 19 A.2d 721 (1941); Trans World Airlines, Inc. v. Hughes Tool Co., 41 Del.Ch. 11, 187 A.2d 350 (1962); Sands v. Lefcourt Realty Corp., supra; and to this purpose neither the nature of the property nor its incidental connection with the lawsuit is material. Breech v. Hughes Tool Co., 21 Del.Ch. 128, 189 A.2d 428 (1963). Thus upon a general appearance by a non-resident defendant, the sequestered property is generally released.

The interest of a state in aiding its citizens in prosecuting claims against non-resident defendants with property in the state has long been recognized. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Such an interest is clearly present in a stockholders' derivative suit, that is, in compelling a non-resident to appear in our court and defend a claim there asserted against him. There is, indeed, a particular valid governmental interest in compelling appearance in a derivative suit in this jurisdiction because the corporation is organized here, an action can always be brought here for its benefit and the regulation of its internal affairs is governed by Delaware law. Speaking generally, a director or officer defendant should be obliged to respond in this jurisdiction which is in a

unique position to make an authoritative determination of "housekeeping" issues and to grant complete relief.

Sequestration is an equitable tool in aid of that interest and to require prior notice and hearing before an order issues would seriously impair the State's ability to protect it. A defendant with notice to appear would be given an opportunity to thwart this Court's jurisdiction by transferring his property before sequestration became effective; even a nominal transfer of stock to street-name, for example, might effectively stop the exercise of a jurisdiction over property within the State. Certainly a plaintiff should not be required to tip his hand in this kind of case and the State has a legitimate interest in protecting any jurisdiction it has when a complaint is filed.

■ I am satisfied that the Due Process Clause does not require notice before a sequestration order issues. This is clearly an "extraordinary situation" for which the Supreme Court recognized an exception from the usual requirement of prior notice and an opportunity to be heard. Beyond doubt that is the significance of what Justice Stewart wrote in *Fuentes* when he said:

"Of course, outright seizure of property is not the only kind of deprivation that must be preceded by a prior hearing. See, e. g., Sniadach v. Family Finance Corp., supra. In three cases, the Court has allowed the attachment of property without a prior hearing. In one, the attachment was necessary to protect the public against the same sort of immediate harm involved in the seizure cases—a bank failure. Coffin Brothers & Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768. Another case involved attachment necessary to secure jurisdiction in state court—clearly a most basic and important public interest. Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 [17 A.L.R. 873]. It is much less clear what interests were involved in the third case, decided with an unexplicated per curiam opinion simply citing Coffin Brothers and Ownbey. McKay v. McInnes, 279 U.S. 820, 49 S. Ct. 344, 73 L.Ed. 975. As far as essential procedural due process doctrine goes, McKay cannot stand for any more than was established in the Coffin Brothers and Ownbey cases on which it relied completely. See Sniadach v. Family Finance Corp., supra, 395 U.S. at 340, 89 S.Ct. at 1822 [23 L.Ed.2d at 353]; id., at 344, 89 S.Ct. 1823 [23 L.Ed.2d at 355] (Harlan, J., concurring)."

And in *Sniadach* Justice Douglas, writing for the Court, cited *Ownbey* with approval as a case in which "special protection to a state" interest was involved.

Thus, while there have been recent significant rulings by the Supreme Court applying due process requirements to pre-judgment seizures of property, these leave untouched the rule applicable when a compelling governmental interest is at stake. And an attachment necessary to secure jurisdiction in a state court is clearly just such an interest. Indeed, Justice Stewart called it "a most basic and important public interest." Our sequestration serves just that purpose. The result, then, admits of no doubt, in my judgment: *Ownbey* is still very much alive and 10 Del.C. § 366 was and is constitutional.

This conclusion is also supported by the rationale and holding of the United States Court of Appeals for the Third Circuit in Lebowitz v. Forbes Leasing and Finance Corp., 456 F.2d 979 (3 Cir. 1972). There the Court upheld the constitutionality of a Pennsylvania foreign attachment statute which, like the Delaware sequestration statute, does not provide for prior notice and hearing. Chief Judge Seitz applied a balancing test and concluded that the State's interest in compelling a non-resident defendant to appear outweighed the consequences to him of being temporarily deprived of his property. And in Pennsylvania the attachment is not dissolved by general appearance of the defendant. Our statute imposes substantially less onerous consequences on a non-resident defendant

and, by the same test, our law is certainly constitutional.

More recently the United States District Court for the District of Delaware considered this precise question in U. S. Industries, Inc., etc. v. Gregg, 348 F.Supp. 1004 (1972), and Judge Stapleton, after a careful and complete analysis of the Delaware statute, concluded that it is constitutional. He distinguished *Fuentes*, where "no more than [a] private gain" was directly at stake and found that the statute is a legitimate exercise of judicial jurisdiction with respect to property within Delaware borders.[2]

\* \* \*

The principles of law approved by the United States Supreme Court in Ownbey v. Morgan are still viable, and the sequestration statute, 10 Del.C. § 366, meets the Federal constitutional requirements. It follows that defendants' motion will be denied.

2. Defendants also cite recent decisions in other state courts relating to the constitutionality of prejudgment attachment proceedings; in Randone v. Appellate Dept. of the Superior Court of Sacramento County, 5 Cal.3d 536, 96 Cal.Rptr. 709, 488 P.2d 13 (1971), for example, the California Supreme Court held unconstitutional a statute which permitted attachment of property without prior notice or hearing. As to such cases, I can only say that their application to the Delaware statute will have to come from our Supreme Court.