**CABLE ADVERTISING NETWORKS, INC., Plaintiff,**

**v.**

**Michael DeWOODY and Paul DeWoody, Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted: March 3, 1993.

Decided: March 10, 1993.

Lawrence C. Ashby, Stephen E. Jenkins and Richard D. Heins, of Ashby & Geddes, Wilmington, Scott R. Erikson, of Hopkins & Sutter, Dallas, TX, for plaintiff.

OPINION

ALLEN, Chancellor.

Cable Advertising Networks, Inc., ("Cable") is a Delaware corporation with its prin-

cipal place of business in the State of Texas. Having just filed a complaint in this court, Cable now moves for the *ex parte* sequestration of certain property of the named defendants, Michael and Paul DeWoody, in order to compel the DeWoodys to appear in this action. These individuals are, according to the allegations of the complaint, residents of Texas and former stockholders of Cable. The complaint alleges that through a reverse stock split and a board resolution under 8 *Del.C.* § 155 (1991), the shares of Cable owned by the DeWoodys have been converted into a right to receive a stated amount of cash. It is this right to receive cash from plaintiff that plaintiff requests the court to "seize" in order to force a personal appearance of defendants. Substantively, Cable seeks a declaratory judgment determining that the amount that the DeWoodys are entitled to receive from it under the Section 155 board resolution is fair. It is alleged that there is an actual controversy with respect to this question.

*     *     *

The sequestration statute, 10 *Del.C.* § 366 (1991), on its face, authorizes the seizure of non-resident defendants' property within the State of Delaware, for purposes of compelling a non-resident to appear in the Court of Chancery. The statute provides that the property sequestered "may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults." 10 *Del.C.* § 366(a). Application of this statute, at least since the well known decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), carries a Delaware court onto thin constitutional ice. *Shaffer v. Heitner*, of course, did not declare Section 366 unconstitutional *per se. Id.* 433 U.S. at 207–09, 97 S.Ct. at 2582. There remain situations in which seizure of property may form a proper basis for the exercise of personal jurisdiction. *See Grynberg v. Burke*, Del.Ch., 388 A.2d

443, 445 (1978); *Bank of America Nat'l Trust & Sav. Assoc. v. GAC Properties Credit, Inc.*, Del.Ch., 389 A.2d 1304, 1308 (1978).

The present application, involving self-attachment (in equity) of a debt owed to a non-resident, raises a host of issues. Only two of those issues, however, need to be addressed. Those questions are, first, whether the Court of Chancery has in any case the power to deny an *ex parte* motion for sequestration? and, second, whether sequestration is authorized in an action in which plaintiff does not seek an award of money from the owner of the property seized? [1]

As explained below, I find that the Court of Chancery has the power and indeed the responsibility to determine whether plaintiff has shown, *prima facie* by affidavit or verified pleading, that the circumstances render an *ex parte* seizure of property consistent with the Fourteenth Amendment of the United States Constitution. I also conclude that on the face of the pleadings, sequestration is not authorized by statute in this action because plaintiff is not seeking monetary damages. Therefore, the motion for sequestration must be denied on this ground alone.

I.

At a time when the constitutionality of the sequestration of the property of non-residents in order to compel their appearance was unquestioned, the Delaware courts viewed the issuance of a sequestration order as the procedural equivalent of the issuance of a summons. Under the pre-*Heitner* regime, our Supreme Court rejected the claim that since 10 *Del.C.* § 366 provided that the court "may" order sequestration under given circumstances, the court therefore had discretion to refuse to do so. The Supreme Court stated:

It has never been suggested, so far as we know, that the use of this process [seques-

---

1. There are at least three other important issues raised by this application. (1) Does defendants' property, which consists not of stock, which has a legal situs in Delaware under 8 *Del.C.* § 169 (1991), but of the right to receive cash in lieu of fractional shares, have a situs in Delaware such that it can be sequestered under the statute? *See Weinress v. Bland*, Del.Ch., 71 A.2d 59 (1950).

(2) Would haling defendants before a Delaware tribunal through sequestration offend traditional notions of fair play and substantial justice and thus violate the Due Process Clause? (3) Could a seizure be ordered *ex parte*, on the present record, without violating the notice and hearing requirements of procedural due process?

tration] by a litigant is controllable by the court's discretion. We think that [plaintiff] is entitled to it as a matter of right, just as he is entitled to a writ of summons.

*Breech v. Hughes Tool Co.,* Del.Supr., 189 A.2d 428, 431–32 (1963). In a second case from that era, the Supreme Court rejected a defendant's claim that, sequestration should only be ordered "upon proof satisfactory to the Court ... that plaintiff has a good cause of action against defendant...." The Supreme Court stated:

> The sequestration statute contains [no such] requirement. If non-residence is alleged, and a monetary claim, in any amount, is asserted, the defendant's property may be seized.

*Hughes v. Trans World Airlines,* Del.Supr., 185 A.2d 886, 889 (1962). Thus, under *Breech* and *Hughes* the sequestration process was seen as a matter of right of plaintiffs. The Court of Chancery was accorded essentially no role in the question whether the process should issue in the first instance. The Court, of course, was recognized as having the power to quash the writ on motion once the process was issued and defendant appeared.

\* \* \*

Since the 1963 *Breech* decision, the law regarding sequestration has changed substantially. First, the concept of procedural due process has developed to require that, except in extraordinary circumstances, parties whose property is to be seized under color of law must be given notice and an opportunity to be heard before such seizure is effectuated. *E.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Second, the circumstances in which a state court may constitutionally exer-

cise jurisdiction over non-residents through sequestration or other remedies have been sharply reduced by *Shaffer v. Heitner.* Under *Heitner,* the exercise of jurisdiction by a state court over a non-resident defendant violates defendant's right to due process unless "minimum contacts" with the forum state exist and "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Heitner,* 433 U.S. at 216, 97 S.Ct. at 2586.

■ *Fuentes v. Shevin* and its progeny, constituted judicial recognition that sequestration was a state interference with property that can violate the constitution unless adequate procedural protections are provided; *Shaffer* commanded that any such process be limited to persons who have some minimal relationship with the forum state. Thus it is, after these cases, clear that the Constitution mandates some minimal protections against wrongful seizures when an attachment or sequestration process is employed.

In *Gordon v. Michel,* Del.Ch., 297 A.2d 420 (1972), this court rejected the argument that developments in procedural due process, as of that time, required that defendants whose property is ordered sequestered be given pre-seizure notice and a hearing. The court reasoned that the emergency exception to the notice and hearing requirements[2] was applicable because, if defendants were supplied with prior notice of the sequestration, they could avoid the court's jurisdiction by removing their property from the state or transferring it to third parties. *Id.* at 423, (citing, *Fuentes,* 407 U.S. at 91 n. 23, 92 S.Ct. at 1999 n. 23).

Accepting arguendo that *Gordon v. Michel* is still good law,[3] it is nevertheless the fact that intervening Supreme Court opinions

---

2. *See, e.g., Formosa Plastics Corp. v. Wilson,* Del. Supr., 504 A.2d 1083 (1986) (pre-hearing revocation of environmental permits by administrative agency held constitutional in light of imminent threat to public health and safety).

3. In *Gordon* this Court premised its opinion, in part at least on the view that *"Ownbey [v. Mor-*

*gan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921)] is very much alive...." 297 A.2d at 423. In the 1977 *Heitner* opinion, however, the Supreme Court cast grave doubt upon the continuing vitality of that once formidable precedent. *See* 433 U.S. at 194 n. 10, 212, 97 S.Ct. at 2574 n. 10, 2584.

have made it clear that even where an emergency justifies pre-notice seizure, due process does require that property not be seized under the authority of a court, without the procedural safeguard of authorization by a judicial officer. Indeed, that authorization must follow a review of the circumstances to determine if the seizure is legally permissible. *See North Georgia Finishing v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Laing v. United States,* 423 U.S. 161, 187–88, 96 S.Ct. 473, 487, 46 L.Ed.2d 416 (1976); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 616, 94 S.Ct. 1895, 1904, 40 L.Ed.2d 406 (1974). *Jonnet v. Dollar Savings Bank,* 530 F.2d 1123, 1130 (3rd Cir. 1976) (an official exercising some discretion and possessing the necessary professional competence required to satisfy due process).

Our Supreme Court recognized this requirement of pre-seizure review in *Greyhound Corp. v. Heitner,* Del.Supr., 361 A.2d 225 (1976); *rev'd on other grounds, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), where, in holding that Section 366 of title 10 authorized a process that was consistent with due process, the Court stated:

> As to safeguards or protection of a defendant's interest, the following appear significant to us:
>
> (1) An order of Court is required to initiate the § 366 process and beyond doubt, that requires an order of a Judge of the Court of Chancery *who has control of the process at all times.*

*Greyhound* at 232 (emphasis added). Thus, in *Greyhound,* the Delaware Supreme Court implicitly recognized the constitutional infirmity of a sequestration procedure that failed to provide judicial supervision of any *ex parte* seizure process. The Court thus implicitly amended its position in *Breech* to allow for the constitutionally mandated judicial control of the sequestration process.

■ Thus, I conclude that the issuance of an *ex parte* order seizing a defendant's property in this state is not a matter of right, in the sense that only ministerial acts are necessary in order to effectuate it. Rather, when seizure is employed to effectuate jurisdiction, in order to satisfy the requirements of due process, it is necessary, at a minimum,

for a judicial officer to evaluate the exigency that is said to justify the deviation from the procedures normally mandated, before a court may constitutionally interfere with the exercise of property rights.

## II.

■ Among the subjects appropriate for judicial review prior to an *ex parte* seizure of property is the question whether plaintiff has shown *prima facie* that the statutory seizure procedure has been validly invoked. In this instance plaintiff has not done so.

Under the *Breech* procedure, when seizure orders were entered automatically, the Court of Chancery would grant motions to quash the writ if it determined that the complaint did not seek a money judgment from the defendants whose property had been seized. *See Steinberg v. Shields,* Del.Ch., 152 A.2d 113 (1959); *Wightman v. San Francisco Bay Toll–Bridge Co.,* 142 A. 783, 785 (1928). Indeed, it has been long recognized that sequestration is only available in cases in which the plaintiff is seeking a money judgment. *Greyhound* at 233, n. 7. *See also Widder v. Leeds,* Del.Ch., 317 A.2d 32 (1974); *Hughes v. Trans World Airlines,* Del.Supr., 185 A.2d 886, 889 (1962) ("the complaint must contain a claim for monetary damage").

*Steinberg v. Shields* is an example. That was an action for waste against directors of a Delaware corporation and a Mr. Shields, who was allegedly the recipient of a gift of stock. In quashing the sequestration of stock owned by the directors, the Court stated:

> The specific relief prayed for in the complaint is the cancellation of or imposition of a constructive trust on the shares allegedly given Shields.... It is therefore pertinent to note that had the moving defendant [directors] defaulted, under the prayers of the present complaint the court could not have entered a money judgment against them. Thus, it could not have sold the seized shares.... I conclude that the allegations of the present complaint are not sufficient to support the seizure of the moving defendants' stocks under 10 *Del.C.* § 366.

*Id.* at 115.

■ In the pending case, Cable does not seek a money judgment against defendants.

Rather, it seeks a judicial determination that its liability to defendants is exactly the amount its board determined it to be. Thus, in no event would defendants have a money judgment entered against them in this action, and their property, if seized, could not be sold to satisfy any judgment. Therefore, under the old learning governing this now atrophied process, it would be error for the court to order defendant's property sequestered to compel their appearance.

It is therefore not necessary for me to express an opinion on the question whether it would satisfy traditional notions of fair play and substantial justice to require former shareholders who appear to have no substantial connection to this jurisdiction other than their relationship to this Delaware corporation, to litigate a claim of this type in the corporate domicile, although I might add that this seems like an especially weak case to try to apply such a principle.[4] The motion for sequestration of plaintiff's obligation to defendants must therefore be denied. It is so Ordered.

---

**4.** A stronger case would be presented where the class of plaintiffs reside in a large number of states; it is necessary to determine the amount of a corporate obligation arising from stockholder status; and that obligation legally would be pre-cisely the same for each defendant. *Compare Hynson v. Drummond Coal Co.,* Del.Ch., 601 A.2d 570, (1991). This speculation, however, does not bear on the question of process which is the subject of this motion.