

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-95,541-01

### EX PARTE LEROY HILBERT ZUBIATE, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 13935-A IN THE 118TH DISTRICT COURT
### FROM HOWARD COUNTY

WALKER, J., filed a concurring opinion, in which NEWELL, J., joined.

### CONCURRING OPINION

I agree with the Court's decision to deny habeas relief to Applicant Leroy Hilbert Zubiate. His rights to confront the witnesses against him, under the Sixth Amendment's Confrontation Clause, and also under the Fourteenth Amendment's Due Process Clause, were not violated when witnesses provided testimony at Applicant's parole revocation remotely using Zoom. As the Court makes clear,[1] the Sixth Amendment applies only to "criminal prosecutions." U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . [.]"). And "the revocation of parole is not part of a criminal prosecution. . . . Parole arises after the end of the criminal

---

[1] Majority op. at 2.

prosecution[.]" *Morrisey v. Brewer*, 408 U.S. 471, 480 (1972).

However, I write separately, first, to note that the Court needn't have gone on to add that Applicant, *accused* of some violation of the terms of his parole release, was *not* an "accused" within the meaning of the Sixth Amendment.[2] Nor was there any need to add that the witnesses providing testimony *against* him that would send him back to prison, were *not* witnesses "against" him within the meaning of the amendment.[3] Whether Applicant is an "accused" and whether the witnesses were "against" him under the Sixth Amendment are moot points; the Sixth Amendment does not apply anyway. *See Morrisey*, 408 U.S. at 480 ("the revocation of parole is not part of a criminal prosecution.").

Second, with regard to Section II of the Court's opinion, I agree, in principle, that "less-than-ideal confrontation" does not necessarily violate the due process-based right to confrontation.[4] It is true that the Supreme Court has said that "[t]he due process clause does not" require "ideal systems for the administration of justice." *Snyder v. Massachusetts*, 291 U.S. 97, 116–17 (1934) (quoting *Ownbey v. Morgan*, 256 U.S. 94, 110–11 (1921)). But that does not mean the due process clause is offended by "more-ideal" or "closer-to-ideal."

Due process, in the context of a parole revocation, "need[s] an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrisey*, 408

---

[2] Majority op. at 3 (citing *Betterman v. Montana*, 578 U.S. 437, 443 (2016); *Pointer v. Texas*, 380 U.S. 400, 406–07 (1965); and *United States v. Fields*, 483 F.3d 313, 328 (5th Cir. 2007)).

[3] Majority op. at 3 (citing *Cruz v. New York*, 481 U.S. 186, 190 (1987); and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009)).

[4] Majority op. at 5.

U.S. at 484. Having everybody—the parties, the parole hearing officer, and the witnesses—together for the parole hearing, live and in person, is *better* at providing "verified facts" and "accurate knowledge" than Zoom.

As the Supreme Court explained in *Maryland v. Craig*, "[t]he combined effect of [the] elements of confrontation—*physical presence*, oath, cross-examination, and observation of demeanor by the trier of fact . . . ensur[es] that evidence admitted . . . is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." 497 U.S. 836, 846 (1990) (emphasis added). "Although face-to-face confrontation . . . is not the *sine qua non* of the confrontation right[,]" *id.* at 847, the Supreme Court has "recognized . . . that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Id.* at 846. Indeed:

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." . . . It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss the right to cross-examine the accuser; both "ensur[e] the integrity of the fact-finding process." . . . The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Coy v. Iowa*, 487 U.S. 1012, 1019–20 (1988) (internal citations omitted).

In contrast, having witnesses appear by Zoom loses the edge that face-to-face confrontation has in enhancing accuracy. It removes one of the "elements of confrontation—physical presence," recognized in *Craig*. *See Craig*, 497 U.S. at 846. While removing one leg of that stool does not necessarily mean the evidence admitted is no longer reliable and not subject to rigorous adversarial testing, it does handicap the factfinding process. While it has been several years since I have conducted direct or cross-examination of a witness, there is no doubt in my mind that Zoom testimony is simply worse than face-to-face testimony. Of course, I cannot speak for all of my colleagues, and I understand that my tolerance for Zoom's downsides may be less than theirs, but I do not think that any of them would suggest that Zoom provides an equivalent experience to live, in-person proceedings.

Even if Zoom videoconferencing can meet the minimum requirements of due process, the Court's opinion today should not be a signal to parole hearing officers that they should be content with the bare minimum. We should strive to achieve the *ideal* whenever and wherever possible. I would encourage parole hearing officers to try for *better*. They should not use Zoom and other tele- and videoconferencing options simply because they are available. There should be in-person, face-to-face proceedings to the extent practicable, giving life to the high *ideals* of the framers who proclaimed that no person shall be deprived of life, liberty, or property, without due process of law.

With these thoughts, I concur in the judgment of the Court.


Filed: March 26, 2025
Publish