**CENTRAL SOYA COMPANY, INC., Plaintiff,**

v.

**COX TOWING CORPORATION et al., Defendants.**

No. GC 74–90–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 17, 1976.

J. Robertshaw, Robertshaw & Merideth, Greenville, Miss., for plaintiff.

L. Carl Hagwood, Campbell & DeLong, Greenville, Miss., Scott W. Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, Swan W. Yerger, Heidelberg, Woodliff & Franks, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The present case was commenced on or about September 23, 1974, as a declaratory judgment action pursuant to 28 U.S.C. § 2201. The original defendants were Cox Towing Corporation, John H. Cox, Mississippi Marine Transport Company, L. B. Lampton, and Southern Farm Bureau Life Insurance Company. The case was brought as an in personam action alleging the breach of a long-term charter of a towboat, the M/V Mark Shurden, ex Wildcat.

After substantial discovery, the plaintiff secured leave of court to file an amended complaint naming T. R. Pittman and Walter Choate as additional defendants in personam and the Mark Shurden in rem. In the amended complaint, plaintiff requested the court to impress a maritime lien on the

Mark Shurden and sell the vessel in order to satisfy plaintiff's claim; however, plaintiff did not request the issuance of process for the Mark Shurden and, to date, has made no attempt to arrest or seize the vessel.

Central Soya abstained from instigating the arrest or seizure of the Mark Shurden in order to provide the present owner of the vessel, Mississippi Marine Transport Company, time to attempt to obtain a bond or letter of undertaking as security for plaintiff's claim in lieu of the vessel itself. Central Soya required a bond or letter of undertaking of at least $1,000,000 and Mississippi Marine Transport has been unable to make any sort of financial arrangements satisfactory to plaintiff.

Negotiations concerning the bond or letter of undertaking having failed, and counsel for the Mark Shurden's present owner having become apprehensive that the vessel would be seized at plaintiff's instance without notice to Mississippi Marine Transport pursuant to Rules C and E of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, Mississippi Marine Transport requested leave of court to amend its answer so as to include a counter-claim against Central Soya, the gravamen of which is a constitutional challenge of Rules C and E. Shortly thereafter, plaintiff moved the court for leave to amend its complaint so as to verify the pleadings on oath or affirmation as required by Rule C(2)[1] and to specifically request issuance of a warrant for the arrest of the Mark Shurden and service by the marshal of the warrant and process in rem upon the occasion of the vessel's next venture into the territorial jurisdiction of this court.

Insomuch as it appeared to the court and counsel alike that the ultimate issues raised by the motion for leave to amend filed on behalf of Mississippi Marine Transport Company and the motion for leave to amend filed on behalf of Central Soya are substantially similar, if not identical, only the motion for leave filed on behalf of the plaintiff was fully argued and briefed by counsel. The court's ruling on plaintiff's motion will accordingly control disposition of defendant's motion.

For the purposes of today's actions, the court will assume the accuracy of the narrative of the facts upon which the present controversy is founded as set forth in plaintiff's brief in support of its motion. Central Soya and Mississippi Marine Transport Company (a non-party to this action) entered into an agreement whereby Mississippi Marine constructed the vessel here in question. Pursuant to the terms of the contract, the defendant Cox Towing was later substituted for Mississippi Marine as owner of the ship. The vessel, which entered service as the Wildcat, was the subject of a long-term charter under the Central Soya—Mississippi Marine—Cox Towing agreement. During the term of the charter, the vessel was sold by Cox to Mississippi Marine Transport Company and, according to the averments of the complaint, was removed from service under the charter. Quite obviously, the ultimate issues in this lawsuit are whether the removal of the vessel from service under the charter constituted a breach of the charter agreement, and, if so, the amount of damages to which plaintiff may be entitled.

Turning then to the motion presently before the court, Central Soya asserts that, under settled principles of admiralty law, breach of a charter such as is here alleged, and damages consequent thereto, may be secured by a maritime lien against the vessel which was the subject of the charter. G. Gilmore & C. Black, The Law of Admiralty 631 (2d Ed. 1975). Accordingly, plaintiff argues that it may bring this action in rem pursuant to Rule C(1)(a) in order to enforce the maritime lien to which it is entitled. Should the court allow the amendment sought by plaintiff, Central Soya intends to proceed under Rule C(3) and (4) to effect the arrest of the Mark Shurden with no further notice to the ves-

---

1. "In actions in rem the complaint shall be verified on oath or solemn affirmation."

sel's present owner.[2] Pursuant to Rule E(5), to obtain release of the Mark Shurden following its arrest at the instance of Central Soya, Mississippi Marine Transport Company would be required to post a substantial bond in an amount to be agreed upon by the parties, or to be fixed by the court.[3]

In attempting to persuade the court to reject plaintiff's request for leave to amend and thereby prevent seizure of the Mark Shurden, counsel for Mississippi Marine Transport makes a two-pronged argument. First, the defendant contends that Rules C and E are violative of the Due Process Clause of the Fifth Amendment on their face and as applied because they make possible the arrest or seizure of defendant's property without notice or opportunity for hearing prior to dispossession. Second, the defendant contends that, under the facts of this case, seizure of the Mark Shurden is not required to afford plaintiff complete protection of its rights and should be disallowed as improper and unnecessary. Because the defendant's second contention is inextricably bound up in the court's disposition of the defendant's first argument, the court will not separately address defendant's second proposition.

■ Since Mississippi Marine Transport is presently seeking injunctive relief from the enforcement of a federal rule of procedure, the question of the necessity of a three-judge court rather naturally arises. Pursuant to 28 U.S.C. § 2282:

> [a]n interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

The court has considered at length the question of whether a three-judge court must pass upon the merits of defendant's claim that certain of the Supplemental Rules for Admiralty and Maritime Claims contain provisions which are repugnant to the Constitution. Under the plain language of the statute, a three-judge court is required only where an injunction is sought preventing enforcement of an Act of Congress. But are the Federal Rules of Civil Procedure the functional equivalent of an Act of Congress in the contemplation of the three-judge statute? The rules themselves are formulated and promulgated by the Supreme Court of the United States subject to rejection or modification by Congress pursuant to 28 U.S.C. § 2072. The Federal Rules of Criminal Procedure are subject to like restrictions under 18 U.S.C. § 3771. Insomuch as the rules when and if modified by the Supreme Court, become effective without any participation whatsoever by

---

**2.** Rule C reads in pertinent part as follows:

(3) Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service.

(4) No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court.

**3.** Rule E(5)(a) reads as follows:

Except in cases of seizures for forfeiture under any law of the United States, whenever process of maritime attachment and garnish-

ment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security. In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

the executive branch of the government, the court is not inclined to equate the nature and effect of the rules of procedure with that of an Act of Congress.

It has been held that a resolution or rule of a single house of Congress is not an Act of Congress within the meaning of the three-judge court statutes. *Powell v. McCormack,* 129 U.S.App.D.C. 354, 395 F.2d 577, 602–03 (1968), *aff'd,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

Although it is not uncommon for the courts to be presented with questions concerning the validity of the federal rules of procedure,[4] the court was able to discover only one opinion dealing with the necessity of convening a three-judge court to hear a constitutional attack on a rule as promulgated by the Supreme Court. In *Chambers v. Moseley,* 306 F.Supp. 1102 (D.C.Kan.), *aff'd,* 419 F.2d 833 (10th Cir. 1969), the court, without considering whether a three-judge court was otherwise required, held that the claim of a habeas corpus petitioner concerning the unconstitutionality of Fed.R. Crim.P. 20 and his attendant prayer for injunctive relief was insubstantial because numerous appellate courts had already upheld the constitutionality of Rule 20. Since, the court, in *Chambers,* grounded its denial of the application for a three-judge court solely on the rule of *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) where the court held that a three-judge court is unnecessary "when the claim that a statute is unconstitutional is wholly insubstantial," the *Chambers* opinion failed to reach the question here presented.

With an appreciation of the essential nature of the Federal Rules of Procedure and in view of the narrow construction which is to be accorded the three-judge statute, *Bailey v. Patterson,* 369 U.S. at 34, 82 S.Ct. at 551, 7 L.Ed.2d at 514, the court has concluded that the convening of the three-judge court is not required to dispose of the constitutional claims presented in the case at bar.

■ Proceeding then to a determination of the constitutionality of the rules of procedure here challenged, defendant relies upon the rule first announced in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and expanded upon in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 40 L.Ed.2d 406, 94 S.Ct. 1895 (1974); and, *North Georgia Finishing, Inc. v. Di-Chem, Inc.,,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The general rule which this court is able to formulate from those cases is that due process of law under the Fifth and Fourteenth Amendments requires notice or opportunity for an early hearing and the participation of a judicial officer whenever a property owner is to be deprived of the use of his property during the pendency of litigation in which the owner is involved. However, and most importantly under the facts of the instant action, the rule which may be synthesized from these cases is subject to an "extraordinary situation" exception. This exception was first noted by the court in *Sniadach* in the following language: "[S]ummary procedure may well meet the requirements of due process in extraordinary situations." 395 U.S. at 339, 89 S.Ct. at 1821, 23 L.Ed.2d at 352 citing *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1945); *Ewing v. Mytinger & Casselbery, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837, (1921); *Coffin Bros. & Co. v. Bennett,* 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928).

In *Fuentes,* the court discussed the "extraordinary situations" exception at some length.

There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut,* 401 U.S. [371], at 379 [91 S.Ct. 780, at 786, 28 L.Ed.2d 113]. These situations, however, must be truly unusual. Only in

---

4. *See, e. g., Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946).

a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Fuentes v. Shevin*, 407 U.S. at 90–91, 92 S.Ct. at 1999. (Footnotes omitted.)

In yet another case *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452, 465 (1974), the Supreme Court upheld a no-notice seizure of a yacht which had been used for unlawful purposes and, in so doing, reiterated and relied upon the "extraordinary situations" exception so as to allow immediate seizure of property without an opportunity for prior hearing in limited circumstances. The Court again cited with approval the holdings in *Coffin Bros. & Co. v. Bennett, Ewing v. Mytinger & Casselbery, Inc.*, and *Ownbey v. Morgan*.

*Ownbey v. Morgan* assumes particular significance insomuch as nearly all the recent cases which have discussed due process in the context of the requirements of preseizure hearing and notice have cited it with approval. *In Ownbey*, the plaintiff caused certain corporate stock, owned by the defendant, to be attached by the courts in the State of Delaware. In order for the defendant, a nonresident of the forum state, to appear specially and contest the action, a $200,000 bond was required pursuant to state law. Posting of the bond would also effect a release of the stock to the custody of the defendant. The defendant was unable to post the bond and judgment based upon the quasi-in-rem jurisdiction of the Delaware court, was ultimately taken against him.

The Court in *Ownbey* approved the attachment procedure employed there in the face of a due process attack, reasoning that insomuch as in personam jurisdiction over the defendant was unavailable, seizure of the defendant's property to be found within the forum state was a necessary and legitimate method for the court to acquire jurisdiction.

In view of the holding in *Ownbey* and in further view of the fact that *Ownbey* has been cited with approval by the Supreme Court in several recent decisions including *Sniadach, Fuentes*, and *Colero-Toledo*, it may be assumed that a situation in which seizure without opportunity for prior hearing is viewed as proper by the present Court could be one where attachment is necessary in order to vest the court with jurisdiction. Indeed, in *Fuentes*, the Court explicitly stated that such an attachment serves what is "clearly a most basic and important public interest." 407 U.S. at 91 n. 23, 92 S.Ct. at 1999, 32 L.Ed.2d at 576 n. 23.

■ In this action, the court presently enjoys in personam jurisdiction over Mississippi Marine Transport, the current owner of the vessel here in question; however, the law of admiralty allows plaintiff here to look to a maritime lien which it may impose upon the Mark Shurden in addition to whatever personal obligations the vessel's owner may have or incur.

In admiralty the vessel is treated as though having a juridical personality, an almost corporate capacity, possessing not only rights but liabilities (sometimes distinct from those of the owner) which may be enforced by process and decree against the vessel, binding upon all interested in her and conclusive upon the world, for admiralty in appropriate cases administers remedies *in rem, i. e.*, against the property, as well as remedies *in personam, i. e.*, against the party personally. 1 Benedict on Admiralty, § 106 at 7–17 (7th rev. ed. E. Jhirad, A. Sann, I. Hall 1975).

Plaintiff here, if foreclosed from attaching the vessel at this time, will be exposed to a definite risk of harm which would not

exist should the court allow the arrest of the Mark Shurden. In order for plaintiff to impress a maritime lien against the vessel, this court must possess in rem jurisdiction over the Mark Shurden. In order to acquire in rem jurisdiction over the vessel, seizure and arrest of the Mark Shurden must be effected. *Dow Chemical Co. v. Barge UM–23B*, 424 F.2d 307 (5th Cir. 1970). Destruction of the vessel would extinguish all maritime liens since there would remain no res to which a lien could attach. Insurance proceeds, if any there be, should the vessel be destroyed would be unavailable to plaintiff since it has been held that a maritime lien does not attach to the proceeds of insurance upon loss of the vessel. *Walsh v. Tadlock*, 104 F.2d 131 (9th Cir. 1939). It therefore follows that although the court possess in personam jurisdiction over the Mark Shurden's owner, in order to afford plaintiff all the protection to which it is entitled under the substantive law of admiralty, it is necessary that plaintiff be allowed to employ the arrest and seizure procedures for which provision is made in Rules C and E. The court feels a reasonable analogy in this regard can be drawn with *Ownbey* in that, in both cases, seizure of the defendant's property is a procedural prerequisite to full protection of plaintiff's legitimate interests. Additionally seizure in both cases was a necessary foundation for the court's assumption of jurisdiction—quasi-in-rem in *Ownbey* and in rem in the case at bar. Accordingly, the court is of the opinion that arrest of the Mark Shurden pursuant to Rules C and E in order to vest the court with in rem jurisdiction over the vessel would not operate to deprive defendant of due process of law insomuch as the seizure would fall within the "extraordinary situations" exception to the rule of *Sniadach* and its progeny.

■ The court's reasoning concerning the additional risk to which plaintiff is exposed absent arrest further serves as a basis for rejecting defendant's argument that, aside from the constitutionality issue, arrest should be denied plaintiff because it is unnecessary to protect plaintiff's rights in this action. Since depriving plaintiff of the right to seize the Mark Shurden in order to obtain in rem jurisdiction over the vessel would impose a certain degree of additional risk of loss on Central Soya, the court cannot agree with defendant's contention that arrest is unnecessary because plaintiff's rights are already fully protected.

■ In addition to the court's conclusion that the arrest of the Mark Shurden pursuant to Rules C and E would fall within the "extraordinary situations" exception to the general rule prohibiting pre-hearing seizure, several other considerations militate against defendant's unconstitutionality argument. First, there is the existence of Rule E(7) of the Supplemental Rules which offers Mississippi Marine Transport some degree of protection from premature or ill-founded seizure of its property.

Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct; and proceedings on the original claim shall be stayed until such security is given, unless the court otherwise directs.

Rule E(7), Supplemental Rules for Admiralty and Maritime Claims.

Pursuant to the above-quoted rule, should Mississippi Marine Transport feel itself in some serious way monetarily damaged by plaintiff's seizure of the Mark Shurden, a counterclaim could be filed and security required of Central Soya. *Bancroft Navigation Co. v. Chadade Steamship Co.*, 349 F.2d 527 (2d Cir. 1965); *Seaboard & Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A. G. Hapag-Hadac Seebaderdienst*, 329 F.2d 538 (5th Cir. 1964).

■ Further, if and when Central Soya effects arrest and seizure of the Mark Shurden, and should Mississippi Marine Trans-

port post a bond in order to obtain the release of the vessel, the costs borne by the defendant in securing the bond are taxable at the conclusion of the action should defendant prevail upon the merits. "Reasonable premiums paid to the surety are allowable as costs to the prevailing party." *Keystone Shipping Co. v. SS Monfiore*, 409 F.2d 1345, 1346 (5th Cir. 1969).

In the final analysis, the court found the following statement by Justice Powell in his separate concurring opinion in *North Georgia Finishing Co. v. Di-Chem, Inc.*, 419 U.S. at 609, 95 S.Ct. at 724, 42 L.Ed.2d at 759 to be of assistance in considering the constitutionality of the arrest procedures here attacked:

> [T]he recent expansion of concepts of procedural due process requires a more careful assessment of the nature of the governmental function served by the challenged procedure and of the costs the procedure exacts of private interests.

Considering the historical development of the concept of arrest of maritime vessels and the close relationship which arrests of this nature have with in rem jurisdiction of admiralty courts, the court feels that seizure in this case serves governmental interests quite similar to those which were at issue in *Ownbey v. Morgan, supra*. In assaying the costs which the pre-hearing seizure of the Mark Shurden will exact of the vessel's present owner, Mississippi Marine Transport, the availability of a procedure whereby the owner may cause a counterbond to be required of the party initiating the arrest, the plaintiff, pursuant to Rule E(7) weighs heavily in favor of allowing the seizure to proceed. As a final consideration, it may be observed that by means of the court's consideration of the instant motions, Mississippi Marine Transport has in fact been afforded both notice and hearing prior to the seizure of the Mark Shurden. While the court did not and does not undertake to determine the relative merits of the claims of the parties in passing upon motions for leave to amend pleadings, it is clear at this point that the plaintiff's claim which it seeks to assert or perfect by way

of arrest of the Mark Shurden is made in good faith and cannot be described as baseless or specious.

An order will be entered granting plaintiff's motion and denying that of defendant.