**KARL SENNER, INC.**

v.

**The M/V ACADIAN VALOR, her engines, tackle, apparel, etc., in rem, Acadian Offshore Services, Inc. and/or Acadian Marine Service, Inc.**

Civ. A. No. 79–2118.

United States District Court,
E. D. Louisiana.

Jan. 25, 1980.

As Amended Feb. 1, 1980.

Jacob J. Amato, Jr., Gretna, La., for plaintiff.

David L. Carrigee, New Orleans, La., for defendant.

ARCENEAUX, District Judge.

## I. Introduction

This action challenges Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, 28 U.S.C.A., ("Rule C"), as violative of an individual's right to due process of law as guaranteed by the Fifth Amendment of the United States Constitution. More specifically, defendants, the M/V ACADIAN VALOR ("ACADIAN"), and Acadian Offshore Services, Inc. and/or Acadian Marine Services, Inc. ("Acadian Offshore"), attacked Rule C as failing to comport with the due process standard set forth by the Supreme Court in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and its progeny.

The issue, as framed by this Court, is whether admiralty is so unique that Rule C, in its application to the facts of this case, should stand despite its failure to comply with the due process standard applicable to cases involving the seizure of property established by the Supreme Court.

The cases of *Fuentes, supra; North Georgia Finishing Co., Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), and the line of cases following those decisions, provide four basic criteria for a constitutional seizure of property under the Fifth Amendment:

1. Effective (prior) notice to property owners (or) persons having interests in property seized;

2. A meaningful and timely hearing;

3. Avoidance of conclusory allegations in the complaint; and,

4. Posting of a bond.

These exact criteria may not be appropriate in all maritime cases; however, they set forth sufficient guidelines to determine

whether Rule C must be found unconstitutional as it relates to the facts of this case.

While cognizant that *in rem* seizures in admiralty have historically been viewed as "unique," this Court is not convinced that such proceedings should be exempt from elemental requirements of procedural due process. In fact, it has long been recognized by this Court that the Fifth Amendment provides a critical safeguard in *in rem* admiralty matters:

> Although recent developments in the constitutional requirements of Due Process have been more concerned with criminal and civil than with admiralty matters and more concerned with state than with federal procedures, the Fifth Amendment *does operate as a limitation on the power of courts of the United States in admiralty matters.* Even though the requirements necessary to constitute notice requisite for Due Process in admiralty *in rem* proceedings are perhaps the least demanding known to the law, considering the worldwide practical effect of the judgments added, still, as in all other areas of the law, notice is required.

*United States v. Steel Tank Barge H 1651, Etc.*, 272 F.Supp. 658, 659–660 (E.D.La.1967) (emphasis added).

In the case at bar, plaintiff Karl Senner, Inc. ("Senner"), pursuant to Rule C, directed the Marshal of the Eastern District of Louisiana to arrest and seize the M/V ACADIAN VALOR in order to enforce a maritime lien resulting from an alleged failure to pay for services rendered. Defendant Acadian Offshore, the owner of the vessel, was joined, *in personam*, in this action.

Upon seizure by the Marshal, defendants brought this motion attacking the constitutionality of Rule C as permitting deprivation of property without due process of law. Defendants claim the summary seizure violates their right to prior notice and hearing and seek to have the arrest of the vessel vacated.

## II. Background

Proceedings *in rem* against a vessel and proceedings *in personam* with process of maritime attachment have long been recognized as part of the maritime law administered by the District Courts of the United States pursuant to (1) Article III, Section 2 of the Constitution; (2) various statutes; and (3) rules adopted by the Supreme Court of the United States. Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims falls within the ambit of this maritime jurisdiction.

The *in rem* procedures set out in the Supplemental Rules permit the seizure of a vessel pursuant to a warrant for her arrest issued by the Clerk of the District Court without affording the owner prior notice or an opportunity to be heard.[1] No pre-seizure hearing or judicial review is contemplated; upon filing of the complaint, the Clerk is required by Rule C(3) to issue a warrant for the arrest of the vessel.[2] The

---

1. In practice, the owner usually does receive prompt notice of the seizure and arranges for release of the vessel upon posting of bond, but without a legal requirement of such notice, it is not assured.

2. Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P., 28 U.S.C.A., provides:

   ACTIONS IN REM: SPECIAL PROVISIONS
   (1) When Available. An action in rem may be brought:
   (a) To enforce any maritime lien;
   (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.
   Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

Statutory provisions exempting vessels or other property owned or possessed by or operated by or for the United States from arrest or seizure are not affected by this rule. When a statute so provides, an action against the United States or an instrumentality thereof may proceed on in rem principles.
(2) Complaint. In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action. In actions for the enforcement of forfeitures for violation of any statute of the United States the complaint shall state the place of seizure and whether it was on land or on navigable waters, and shall contain

party requesting the seizure is not even required to post a bond which would provide some protection to the vessel owner, should the vessel owner prevail. If the

such allegations as may be required by the statute pursuant to which the action is brought.

(3) Process. Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service. If the property that is the subject of the action consists in whole or in part of freight, or the proceeds of property sold, or other intangible property, the clerk shall issue a summons directing any person having control of the funds to show cause why they should not be paid into court to abide the judgment.

(4) Notice. No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed as provided by subdivision (6) of this rule. This rule does not affect the requirements of notice in actions to foreclose a preferred ship mortgage pursuant to the Act of June 5, 1920, ch. 250, § 30, as amended.

(5) Ancillary Process. In any action in rem in which process has been served as provided by this rule, if any part of the property that is the subject of the action has not been brought within the control of the court because it has been removed or sold, or because it is intangible property in the hands of a person who has not been served with process, the court may, on motion, order any person having possession or control of such property or its proceeds to show cause why it should not be delivered into the custody of the marshal or paid into court to abide the judgment; and, after hearing, the court may enter such judgment as law and justice may require.

(6) Claim and Answer; Interrogatories. The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the

parties are unable to agree with respect to the nature or amount of the security, a hearing before a district judge is provided for by Rule E(2), (5).[3]

right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that he is duly authorized to make the claim. At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint. In actions in rem interrogatories may be so served without leave of court.

3. Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P., 28 U.S.C.A., provides:

(2) Complaint; Security.

(a) *Complaint.* In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

(b) *Security for Costs.* Subject to the provisions of Rule 54(d) and of relevant statutes, the court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against him by any interlocutory order or by the final judgment, or on appeal by any appellate court.

\* \* \* \* \* \*

(5) Release of Property.

(a) *Special Bond.* Except in cases of seizures for forfeiture under any law of the United States, whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security. In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

Relying upon recent Supreme Court cases holding that certain state attachment and garnishment procedures violate the due process clause of the Fourteenth Amendment,[4] defendants herein, the M/V ACADI-AN VALOR and its owner, a Louisiana corporation, contend that Rule C procedures deny those procedural safeguards found by the Supreme Court to be inherent in Fifth Amendment due process, and seek a release of the security posted and dismissal of the *in rem* proceeding.

### III. Procedural Due Process

Due process is a flexible concept; what process is due in any situation is determined by an analysis of the particular circumstances, including the functions served and interests affected. Therefore, this Court is limited by the particular facts before it, and confines its decision to the narrow question presented by the facts of this case: whether a pre-hearing seizure of a vessel, where the Court has personal jurisdiction over the defendant/owner of the vessel, violates de-

fendants' right of due process before being deprived of the use of their property.

The fundamental requirements of due process are notice and a right to be heard, and both "must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), quoting from *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

Both notice and a hearing are ordinarily required *before* property is taken although, as the Court stated in *Fuentes* :

> There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut*, 401 U.S. [371], at 379 [91 S.Ct. 780, at 786, 28 L.Ed.2d 113]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the

(b) *General Bond.* The owner of any vessel may file a general bond or stipulation with sufficient surety, to be approved by the court, conditioned to answer the judgment of such court in all or any actions that may be brought thereafter in such court in which the vessel is attached or arrested. Thereupon the execution of all such process against such vessel shall be stayed so long as the amount secured by such bond or stipulation is at least double the aggregate amount claimed by plaintiffs in all actions begun and pending in which such vessel has been attached or arrested. Judgments and remedies may be had on such bond or stipulation as if a special bond or stipulation had been filed in each of such actions. The district court may make necessary orders to carry this rule into effect, particularly as to the giving of proper notice of any action against or attachment of a vessel for which a general bond has been filed. Such bond or stipulation shall be indorsed by the clerk with a minute of the actions wherein process is so stayed. Further security may be required by the court at any time.

If a special bond or stipulation is given in a particular case, the liability on the general bond or stipulation shall cease as to that case.

(c) *Release by Consent or Stipulation; Order of Court or Clerk; Costs.* Any vessel, cargo, or other property in the custody of the marshal may be released forthwith upon his acceptance and approval of a stipulation,

bond, or other security, signed by the party on whose behalf the property is detained or his attorney and expressly authorizing such release, if all costs and charges of the court and its officers shall have first been paid. Otherwise no property in the custody of the marshal or other officer of the court shall be released without an order of the court; but such order may be entered as of course by the clerk, upon the giving of approved security as provided by law and these rules, or upon the dismissal or discontinuance of the action; but the marshal shall not deliver any property so released until the costs and charges of the officers of the court shall first have been paid.

(d) *Possessory, Petitory,* and *Partition Actions.* The foregoing provisions of this subdivision (5) do not apply to petitory, possessory, and partition actions. In such cases, the property arrested shall be released only by order of the court, on such terms and conditions and on the giving of such security as the court may require.

4. *North Georgia Finishing Co., Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government[al] official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

407 U.S. at 90–91, 92 S.Ct. at 1999–2000.

In *Central Soya Co., Inc. v. Cox Towing Corp.*, 417 F.Supp. 658 (N.D.Miss.1976), Rule C was upheld as falling within the extraordinary exception of *Fuentes.* *Central Soya*'s facts were dissimilar to those present in this case because the hearing which permitted the seizure in *Central Soya* actually preceded the arrest of the vessel. Further, we believe the Court in *Central Soya* erroneously characterized the facts of its case as constituting one of the "extraordinary situations" alluded to in *Fuentes. Central Soya* demonstrates that Rule C is overbroad as it presently stands, because the Court was forced to find an "extraordinary situation" in a common maritime seizure.

The most recent case to analyze a due process challenge to Rule C also relied upon the "exception" stated in *Fuentes* for "exceptional circumstances." *Hjalmar Bjorges Rederi and M/V Bjorghav v. The Tug Boat CONDOR*, 1979 A.M.C. 1696 (S.D.Cal.1979).[5] The *CONDOR* Court found the three *Fuentes*' conditions satisfied because: 1) the arrest procedure has been an "integral and necessary feature" throughout the history of maritime law; 2) due to the "mobile and international character of shipping" arrest of the vessel is necessary to acquire jurisdiction and provide a forum for maritime claims; 3) "the need for prompt action is recognized as peculiar to admiralty"; and, 4) the government interest in admiralty procedures far exceeds those involved in

state garnishment proceedings. 1979 A.M.C. at 1702.

In sum, the *CONDOR* Court also found admiralty to be "unique," relying upon the "history of maritime law" and the "strong government interest" in admiralty proceedings to justify an absence of due process. It did not explain how these governmental interests would be compromised or how admiralty proceedings would be hampered by the imposition of due process safeguards. Certainly, "a clerk's determination that plaintiff's verified complaint presents an admiralty claim," does not satisfy the *Fuentes*' third criteria that the seizure be initiated by "a government official responsible for determining, under standards of a narrowly drawn statute, that [the seizure] was necessary in the particular circumstances." [6]

A. "Necessary to Secure an Important Governmental or Public Interest"

The case of *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), cited with approval in *Fuentes*, 407 U.S. at 91, n. 23, 92 S.Ct. at 1999, n. 23, holds that the due process requirement of effective prior notice is satisfied where a pre-hearing seizure is necessary to secure jurisdiction. *Central Soya* relied on this exception in finding Rule C constitutional. However, the viability of *Ownbey* is questioned by this Court, particularly insofar as it provides authority to remove due process constraints from Rule C seizures.

The status of *Ownbey* as a *quasi in rem* action preceding *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), is automatically uncertain. Further, the more recent Supreme Court decision in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, *rehearing denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974), indicates that acquiring jurisdiction is not an end in itself unless accomplished in aid of an important

---

**5.** The *CONDOR* case involved solely an *in rem* action, and may be distinguished from the case at bar on the basis of that fact alone.

**6.** Rule C is clearly overbroad: it applies indiscriminately to all seizures of vessels, without regard to factual distinctions. In no sense does it meet the narrowly-drawn statute exception in *Fuentes.*

governmental or public interest. *Calero-Toledo* correctly applies the *Fuentes* governmental interest test:

> First, seizure under the Puerto Rican statutes serves significant governmental purposes: Seizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions.

416 U.S. at 679, 94 S.Ct. at 2089–2090, 40 L.Ed.2d at 465. Thus, it seems clear that jurisdiction-securing devices must involve a governmental or public interest. When purely private interests are involved, such as those present in this case, the situation cannot be classified as "truly unusual." *Fuentes, supra*, 407 U.S. at 90, 92 S.Ct. at 1989. Application of jurisdiction-securing devices must, therefore, be narrow, and linked to an important governmental or public interest. The need to assess "the costs the procedure exacts [of] private interests," must not replace procedural safeguards when the seizure is initiated by self-interested private parties. 419 U.S. at 610, 95 S.Ct. at 724.[7]

The *Central Soya* Court did not deem the existence of personal jurisdiction over the defendants as relevant to the *in rem* jurisdiction over the vessel, relying on the personification theory, and concluded that *in rem* actions are essential to admiralty:

> Plaintiff here, if foreclosed from attaching the vessel at this time, will be exposed to a definite risk of harm which would not exist should the court allow the arrest of the Mark Shurden. In order for

plaintiff to impress a maritime lien against the vessel, this court must possess in rem jurisdiction over the Mark Shurden. In order to acquire in rem jurisdiction over the vessel, seizure and arrest . . . must be effected. *Dow Chemical Co. v. Barge UM–23B*, 424 F.2d 307 (5th Cir. 1970).

417 F.Supp. at 663–664. As the Court pointed out, destruction of a vessel extinguishes maritime liens by eliminating the *res*. Even insurance proceeds would be lost to plaintiff because maritime liens do not attach to insurance proceeds upon the loss of the vessel. 417 F.Supp. at 664.

These statements though true, provide no argument against constitutional due process guarantees. Seizure may be a prerequisite to impressing a maritime lien; however, the implementation of the seizure need not conflict with due process of law. Rule C and the "uniqueness" of admiralty law provide the sole bases for summary seizure of a vessel. Research and briefing of this point by counsel revealed no compelling, or even persuasive, authorities, with the possible exception of *Central Soya*, to overcome the Supreme Court's clear expression in *Di-Chem* that "We are no more inclined now than we have ever been in the past to distinguish among different kinds of property in applying the Due Process Clause." 419 U.S. at 608, 95 S.Ct. at 723.

The *Central Soya* doctrine is particularly inappropriate here, where the vessel owner is before the Court. Courts have time and again acknowledged the personification theory to be a fiction whose real value is simply as a mechanism to enforce the *in personam* liability of the owner.[8] Thus,

---

7. Plaintiff's memorandum specifically states it did not effect the seizure to gain jurisdiction. The arrest of the vessel was solely to insure payment.

8. *United States v. Bissett-Berman Corp.*, 481 F.2d 764, 771–72 (9th Cir. 1973); *Ramos v. Beauregard, Inc.*, 423 F.2d 916, 918 (1st Cir. 1970), *cert. denied*, 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970); *Noel v. Isbrandtsen Co.*, 287 F.2d 783, 786–87 (4th Cir. 1961), *cert. denied*, 366 U.S. 975, 81 S.Ct. 1944, 6 L.Ed.2d 1264 (1961). *Contra, Grillea v. United States*, 232 F.2d 919, 923–24 (2d Cir. 1956). *See also*

*California v. Italian Motorship Ilice*, 534 F.2d 836, 841–43 (9th Cir. 1976) (liability in rem may be imposed where owner is not liable but compulsory pilot is at fault). In two cases the Supreme Court expressly declined to decide whether *in rem* liability could be imposed without *in personam* liability. *See Guzman v. Pichirilo*, 369 U.S. 698, 700 n. 3, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). *But see Reed v. Steamship Yaka*, 373 U.S. 410 at 419 n. 2, 83 S.Ct. 1349 at 1355, 10 L.Ed.2d 448 (1963) (Harlan, J., dissenting) (result of *in rem* liability without *in personam* liability would be "a gross misapplica-

when *in personam* jurisdiction exists, as it does in the case at bar, there is no basis for ignoring the fundamental safeguards contained in the due process clause.

B. "Special Need for Prompt Action"

Plaintiff urges this Court to find that *Fuentes* second requirement, a situation necessitating prompt action, is present, because a vessel may be easily removed from the Court's jurisdiction. However, it has not been shown that the Rule's present provisions, which clearly permit a seizure without notice or hearing, are an appropriate solution to the need for prompt action.

In *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court upheld the Louisiana sequestration statute which allows a seller/creditor holding a vendor's lien after posting a bond, to secure a writ of sequestration and to cause the sheriff to take possession of property. A writ of sequestration may only be issued by a *judge* upon the creditor's filing of an affidavit which clearly sets forth sufficient facts to justify the issuance of the writ.[9] The Louisiana law also expressly entitles the debtor to an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued. In upholding the narrowly-drawn Louisiana statute, the Supreme Court emphasized three "saving clauses:" (1) judicial control of the seizure process;[10] (2) the requirement of a pre-seizure bond; and, (3) the availability of an immediate post-seizure hearing.[11] Should the writ be dissolved, "there are 'damages for the

wrongful issuance of a writ' and for attorney fees 'whether the writ is dissolved on motion or after trial on the merits. (La. Civ.Code) Art. 3506.'" *Mitchell v. W. T. Grant Company, supra*, 416 U.S. at 616–617, 94 S.Ct. at 1904–1905.

Rule C lacks at least two of the "saving" devices sanctioned by the Supreme Court in *Mitchell* : 1) no judicial officer intervenes until defendant comes to Court to answer the plaintiff's allegations; and 2) no pre-seizure bond is required, though, on cross-claim by defendant, plaintiff *may* be forced to furnish a bond.[12]

A Georgia garnishment statute which did not have the "saving characteristics" of the Louisiana sequestration statute was struck down in *North Georgia Finishing Co., Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). The Supreme Court, in describing the procedures laid out in the Georgia statute, was simultaneously enumerating its due process shortcomings:

> The writ of garnishment is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. § 46–103. The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, without participation by a judge. Upon service of the writ, the debtor is deprived of the use of the property in the hands of the garnishee. Here a sizable bank account was frozen, and the only method discernible on the face of the statute to dissolve the garnishment was to file a bond to protect

tion of a fiction whose principal modern function is as a procedural device to provide a convenient forum where none would otherwise be available").

9. Louisiana law requires that "specific facts as to the grounds relied upon for issuance must be contained in the verified petition in order that the [assessing] judge can properly evaluate the grounds . . ." *Mitchell v. W. T. Grant Company, supra*, 94 S.Ct. at 1905, f.n. 12.

In this case, the complaint consists solely of conclusory statements. Although reference is made to an "itemized account which is attached hereto," no such itemization appears in the record, and apparently was not annexed to

the original petition upon which the seizure was ordered.

10. *Compare Buckner v. Carmack*, 272 So.2d 326 (La.1973).

11. Neither the Supplemental Rules for Certain Admiralty and Maritime Claims nor the Local Rules of the United States District Court for the Eastern District of Louisiana provide for an immediate post-seizure hearing.

12. In the case at bar, the magistrate did not require plaintiff to furnish a bond. *See* Admiralty Rule E(7).

the plaintiff creditor. There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant debtor's challenge to the garnishment will not be entertained, whatever the grounds may be.

*Di-Chem, Inc., supra,* 419 U.S. at 607, 95 S.Ct. at 722–23.

Property, simply because it is movable, possesses no inherent characteristics which immunize it from due process.[13] To hold otherwise would invite distinctions which the Supreme Court has consistently refused to recognize. Indeed, it is difficult to contemplate property more mobile or more susceptible of concealment than automobiles, motorboats, or refrigerators. Yet, it was in the context of litigation involving such "transitory" items that *Fuentes* was conceived.

### C. "Strict State Control Over Its Monopoly of Legitimate Force"

The third prerequisite to seizure listed in *Fuentes* is that the state maintain strict control over its monopoly of legitimate force: the person initiating the seizure must be a government official who determines, under a narrowly-drawn statute, that the seizure is necessary and justified. 407 U.S. at 91, 92 S.Ct. at 2000. In striking down the replevin statutes, the *Fuentes* Court stated:

> No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark.

407 U.S. at 93, 92 S.Ct. at 2001.

As noted above, Rule C does not require any pre-seizure judicial supervision, nor

does it require the pleading with specificity of the facts supporting the claim.[14] Indeed, in our case, the plaintiff's complaint was clearly conclusory and conspicuously void of any clarifying statements which might present a factual basis for the seizure. Thus, this minimal requirement of *Fuentes* has not been met. Obviously, Rule C is devoid of that "strict control" over the federal government's monopoly of legitimate force, i. e., admiralty jurisdiction, that *Fuentes* requires.

### IV. Bethlehem Steel

The Eastern District of Pennsylvania upheld the constitutionality of Rule C in *Bethlehem Steel Corp. v. S/T VALIANT KING, et al.,* 1977 A.M.C. 1719 (E.D.Pa.1974). There, the Court elected to disregard the *Fuentes* line of cases, declaring that they were "decided without reference to Admiralty practice and procedures." 1977 A.M.C. at 1721. Although it is appropriate to consider the uniqueness of admiralty in certain areas, this Court does not believe that "uniqueness" is relevant in respect to basic Fifth Amendment due process requirements. The *Bethlehem* Court had difficulty in understanding "how a *res* or thing which is itself *the* 'property' can allege that *it* has been deprived of *its property* without due process of law." 1977 A.M.C. at 1721. But that Court refused to consider the personification theory which transforms a vessel into a legal person for jurisdictional purposes. Inasmuch as the creation of that legal person endows the Courts with power over it, that power must be exercised as it would be exercised over other legal persons.

In this case, however, we need not consider whether a vessel can or cannot have personal rights. In contrast to *Bethlehem Steel,* where the owners were not served, but attempted to make a special or limited appearance to contest the seizure, the owners in this case are subject to the personal

---

**13.** Admiralty cases have uniformly presumed the need for immediate seizure. *E. g., Bethlehem Steel Corp. v. S/T VALIANT KING, et al.,* 1977 A.M.C. 1719 (E.D.Pa.1974).

**14.** We also note the case of *Lee Stoner v. O/S Neiska II, et al.,* 1978 A.M.C. 2650 (D.C.Alas. 1978), upholding Rule C, which we distinguish as relying, in part, on a local rule providing for an expeditious post-seizure hearing.

jurisdiction of this Court, and they are the "persons" who have been deprived of their property without due process of law.

## V. Conclusion

To say that the prophylaxis of judicial supervision or a protective pre-seizure bond are not required in admiralty seizures simply because admiralty is "unique" is not enough. This Court neither questions the necessity of seizures in admiralty, nor contemplates the promulgation of rigorous rules to effect such seizures, but is compelled to hold that the seizure in this case failed to comport with basic concepts of due process which the Court finds applicable to this seizure of a vessel.[15] To do otherwise would amount to a finding that due process stops at the water's edge.

We, therefore, find that Rule C violates the due process clause of the Fifth Amendment where the Court has personal jurisdiction over the vessel owners and the seizure of the vessel, *in rem,* is accomplished without prior notice, hearing or judicial intervention.[16]

The motion of defendants, Acadian Offshore Services, Inc. and Acadian Marine Service, Inc., to dismiss the *in rem* proceedings filed by the plaintiff pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, 28 U.S.C.A., is hereby GRANTED.

**15.** In attempting to describe a procedure without constitutional infirmities, a recent District Court opinion included the following suggestions.

A formal hearing is probably unnecessary: Given the transitory nature of maritime property and the necessity for prompt action, the writ could issue *ex-parte* by convincing [a] court, even by a showing based on reliable hearsay testimony, that reasonable cause exists for the issuance of the writ. The party seeking the writ should at least be required to show that a maritime debt probably exists . . . . Mere conclusory allegations should not suffice. This suggested procedure would be much more reliable than the one invoked in this case, where the writ issued essentially on a hearsay complaint and conclusory affidavit without any judicial inquiry.

*Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447, 459–60, n. 84 (W.D.Wash.1978) (reviewing Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R. Civ.P., 28 U.S.C.A.).
*See Cook Industries, Inc. v. Tokyo Marine Company, Ltd.,* 1978 A.M.C. 1979 (D.C.Alas. 1978), finding Rule B(1) lacking in constitutional safeguards because it permits conclusory pleading and does not require judicial scrutiny of the issuance of the writ, a creditor's bond, or a post-seizure hearing.

**16.** This Court does not consider and makes no conclusions as to whether the same result would have been reached had the vessel owners not been subject to the Court's personal jurisdiction.